UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re NVIDIA CORP. DERIVATIVE LITIGATION | Master File No. C-06-06110-SBA (JCS) |
| | [PROPOSED] ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT, AS AMENDED |
| This Document Relates To: | |
| ALL ACTIONS. | |

The parties are before the Court on Plaintiffs' Motion for Final Approval of Derivative Settlement. The Court has received, read and considered the papers filed in connection with the motion as well as the papers filed in connection with the preliminary settlement approval, per the Court's order of December 22, 2008. Based on the record submitted and the lack of objection to the settlement, the Court hereby grants final approval of the settlement (the "Settlement") of this action.[1] Further, the Court hereby approves the payment of the negotiated attorneys' fees and expenses.

Moreover, this Court has determined that it has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement and this Final Judgment.

---

[1] This Order incorporates by reference the definitions in the Settlement Agreement and, unless otherwise defined herein, all capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement. For the purposes of this Order, the Court adopts the Factual and Procedural Background set forth in §II of the Settlement Agreement.

I.      BACKGROUND

The parties to this action have requested approval of the Settlement of the derivative claims brought on behalf of NVIDIA Corporation ("NVIDIA") against certain of its officers and directors. The terms of the Settlement are set forth in the Settlement Agreement. The Settlement resolves the derivative claims pending in this Court, as well as a consolidated derivative action filed in the Superior Court of the State of California, County of Santa Clara, captioned *In re NVIDIA Corporation Derivative Litigation*, Case No. 1:06-CV-073475 (the "Santa Clara Action").[2] The core allegations underlying the complaints filed in each of the actions relate to an alleged options backdating scheme that rendered NVIDIA's financial statements during the period of 1999 through 2006 materially false and misleading.

The Settlement Agreement negotiated between the parties includes several elements, each of which provides substantial benefit to NVIDIA and its shareholders. The Settlement Agreement includes an agreement to enact and/or continue numerous corporate governance policies and changes that will strengthen NVIDIA's internal controls and the independence and accountability of NVIDIA's Board of Directors (the "Board"). These corporate governance policies and changes, which are set forth in Exhibit A to the Settlement Agreement, include, but are not limited to, modifications to policies and procedures regarding the appointment and duties of a Lead Independent Director, the composition of NVIDIA's Board, the compensation of NVIDIA's officers and directors, stock ownership requirements for NVIDIA's officers and non-employee directors and the education of the Company's directors. To ensure adherence to these policies, the Board will adopt resolutions and amend committee charters or the Corporate Governance Policies of the Board such that the policies will remain in effect for a period of three years following the Settlement Date or through the end of NVIDIA's fiscal year 2012, whichever is later. The Court finds that theses corporate governance policies and changes provide substantial value to NVIDIA and its shareholders.

---

[2]     The Parties have represented that plaintiffs in a shareholder derivative suit filed in the Delaware Court of Chancery, titled *The Police and Fire Retirement System for the City of Detroit and Irving Fleischman v. Huang, et al.*, Case No. 2497-CC (the "Delaware Action"), have submitted a substantially similar settlement agreement to the Delaware Court for approval.

In addition to these valuable corporate governance policies and changes, under the terms of the Settlement Agreement NVIDIA shall receive a direct economic benefit of $15,816,000. The economic benefit to NVIDIA and its shareholders consists of: (a) a cash payment of $8,000,000 from NVIDIA's D&O insurance carrier; (b) $456,000 in value from defendant Jen-Hsun Huang's ("Huang") completed voluntary re-pricing of mispriced stock options; (c) $3,500,000 million in value from defendant Huang via future re-pricing and/or cancellation of unexercised options; and (d) $3,860,000 million in value from a completed 409A tender offer.

## II.     BASIS FOR GRANTING APPROVAL

There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy. "There is an overriding public interest in settling and quieting litigation." *MWS Wire Indus., Inc. v. California Fine Wire Co.,* 797 F.2d 799, 802 (9th Cir. 1986), *quoting United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). "Because shareholder derivative actions are 'notoriously difficult and unpredictable . . . settlements are favored.'" *In re AOL Time Warner Shareholder Derivative Litigation*, 2006 U.S. Dist. LEXIS 63260, *8 (S.D.N.Y. September 6, 2006) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs the settlement of derivative actions. *Wiener v. Roth*, 791 F.2d 661 (8th Cir. 1986). A derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Pursuant to this Court's Order dated December 19, 2008 preliminarily approving the Settlement (the "Preliminary Approval Order"), NVIDIA provided notice to shareholders of the Settlement (the "Notice") pursuant to and in the manner directed by the Preliminary Approval Order. Proof of mailing of the Notice was filed with the Court, and full opportunity to be heard has been offered to all Parties and stockholders. The form and manner of the Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Federal Rule of Civil Procedure Rule 23.1 and due process.

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v.*

*Tucson Elec. Power Co.*, 8 F.3d at 1370 (9th Cir. 1993).  The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court not this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id.* (emphasis in original).  The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extend of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted).

*Accord Torrisi*, 8 F.3d at 1370, 1375.  Therefore, in exercising its discretion,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625.  At bottom, the Ninth Circuit has recognized that, pursuant to Fed. R. Civ. P. 23.1, the Court must determine whether the settlement is "fundamentally fair, adequate and reasonable." *In re Pacific Enterprises Securities Litigation*, 47 F. 3d 373, 377 (9th Cir. 1995) (citation omitted).  Under these criteria, the Settlement warrants approval by the Court.  The Court finds that the Settlement Agreement and Settlement are fair, reasonable, adequate and in the best interests of NVIDIA and its stockholders.

Here, there is no evidence of fraud or collusion, and the Settlement is the result of good faith arm's-length bargaining. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).  The Settlement was negotiated by experienced counsel on behalf of all parties, the parties engaged in

significant negotiations, including at least four formal mediation sessions, and the parties were assisted by an experienced mediator in reaching the Settlement, the Honorable Judge Infante (Ret.). Judge Infante's mediation "weighs considerably against any inference of a collusive settlement." *In re Apple Computer, Inc. Derivative Litig.*, No. 06-4128 JF (HRL), slip op., at 4 (N.D. Cal. Nov. 5, 2008)(citations omitted). Moreover, the involvement of multiple counsel from different firms "suggests a lack of collusion." *In re Apple Computer, Inc. Derivative Litig.*, No. 06-4128 JF (HRL), slip op., at 5 (N.D. Cal. Nov. 5, 2008)(citing *Gay v. Waiters' & Dairy Lunchmen's Union Local No. 30*, 86 F.R.D. 500, 503 n.7 (N.D. Cal. 1980). Based on these factors, the Court finds that the Settlement is the result of good faith arm's-length bargaining.

Moreover, the Settlement is "fair, reasonable and adequate." In addition to the valuable corporate governance policies and changes, NVIDIA was able to obtain significant financial benefits valued at $15.8 million. Strong corporate governance is fundamental to the economic well-being and success of a corporation. Indeed, "Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *Cohn v. Nelson*, 375 F.Supp.2d 844, 853 (E.D. Mo. 2005) (citing cases).

Under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970). Following *Mills*, Ninth Circuit courts have consistently approved attorneys' fees and expenses in derivative stock option backdating actions where plaintiff's efforts resulted in significant monetary recoveries, as well as non-pecuniary benefits in the form of valuable corporate governance. *See, e.g.*, *In re McAfee, Inc. Derivative Litig.*, No. 5:06-cv-03484-JF, slip op. (N.D. Cal. Feb. 2 ,2009) (awarding $13.75 million fee in connection with $30 million backdating derivative settlement); *In re Activision, Inc. S'holder Derivative Litig.*, No. CV-06-04771-MRP(JTLx), slip op. (C.D. Cal. July 21, 2008) (awarding $10.75 million fee in connection with $24.3 million backdating derivative settlement); *In re Juniper Derivative Actions*, No. 5:06-cv-03396-JW, slip op. (N.D. Cal. Nov. 13, 2008) (awarding $9 million in fees in connection with the $22.7 million backdating derivative settlement); *In re NVIDIA Corp. Derivative*

*Litig.*, slip op. at 4-5 (preliminarily approving $7.25 million fee in connection with $15.8 million backdating derivative settlement).[3]

The Ninth Circuit has determined that the "benchmark" for attorneys' fees in common fund cases is 25 percent. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002). Thus, for example, the Ninth Circuit has held that a 28 percent fee award was reasonable where plaintiffs' counsel achieved an exceptional result in the face of extreme risk, and obtained benefits beyond a cash settlement. Id. at 1048-49. Likewise, in In re Apple Secs. Deriv. Litig., C 06-4128 JF, Judge Fogel approved an $8.5 million fee award in an options backdating case where the settlement value was $14 million, resulting in a fee award that was over 50 percent of the settlement.

Here, NVIDIA has agreed to pay attorneys' fees and expenses in the aggregate amount of $7,250,000 million; $2,465,000 to counsel in the above-captioned action, $2,030,000 to counsel in the Santa Clara Action, and $2,755,000 to counsel in the Delaware Action. While this fee award is above the benchmark, the Court hereby finds that, in prosecuting the actions and negotiating the Settlement, plaintiffs' counsel have conferred substantial pecuniary and non-pecuniary benefits upon NVIDIA. The Court further finds that the attorneys' fees and expenses agreed to by the parties are fair, reasonable and adequate. The Court notes that recovery in relation to the loss is significantly greater than a typical securities case. The recovery represents a 12 percent recovery ratio compared to the average recovery of 2.7 percent. (Joint Decl. ¶ 87.) In addition, plaintiffs vigorously pursued this case on three fronts in the face of stiff opposition, thus adding to the riskiness of the case. And finally, as confirmed in the

---

[3] *See also City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-122302, slip op. (Fulton County, Ga. June 10, 2008) (awarding $14.5 million fee in connection with corporate governance stock option backdating settlement); *Unite Nat'l Ret. Fund v. Watts*, No. Civ. A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (awarding $9.2 million based on "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement"); *In re Schering-Plough Corp. S'holders Derv. Litig.*, No. C-03-1826, 2008 WL 185809, at *5 (D.N.J. Jan. 14, 2008) (granting attorneys' fees of $9.5 million for the substantial benefits the corporate governance procedures provided to the company).

declaration of Professor Fried, the settlement confers significant benefits to the company and its shareholder in the form of new corporate governance rules that will assist in preventing this type of misconduct from recurring. (E.g., Fried Decl. ¶ 38.)

In light of these and the reasons stated on the record, the Court finds that the negotiated and agreed upon fees and costs are "fair, reasonable, and adequate" and within the range of fees awarded in other options backdating cases. *See, e.g.*, *In re McAfee*, No. 5:06-CV-03484-JF (N.D. Cal. February 2, 2009) (awarding $13.75 million in fees in connection with a $30 million *settlement; In re Juniper*, No. 5:06-cv-03396-JW slip op. (N.D. Cal. November 13, 2008) (awarding $9 million in fees and expenses in connection with the settlement of options backdating allegations); *City of Pontiac*, No. 2006-cv-122302, slip op. (Fulton County, Ga. June 10, 2008) (awarding $14.5 million fee in connection with settlement of options backdating allegations); *In re Activision*, No. CV-06-04771-MRP(JTLx), slip. op. (C.D. Cal. July 21, 2008) (approving $10 million in fees and expenses in options backdating case).

In addition, an evaluation of the benefits of settlement must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). The outcome of this action was by no means a foregone conclusion. Had Federal Plaintiffs continued to litigate, they would have faced a host of potential risks and costs, including the potential for successful attacks on the pleadings, high costs associated with lengthy and complex litigation, potential loss on summary judgment, and risks and costs associated with trial, should the case progress that far. Indeed, even a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation. *See Id.* at 625. Indeed, the Ninth Circuit, in affirming a district court's approval of a settlement of a derivative action noted that the "odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re Pac. Enters.*, 47 F.3d at 373, 378. Similarly, by reaching the Settlement, Defendants

have avoided significant risks and costs, including the costs associated with continued litigation, potential liability and exposure to damages, and the distraction that arises as a result of litigation.

Finally, significant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the Settlement. *See Officers for Justice*, 688 F.2d at 625. Here, the Parties have represented that each independently considered the Settlement and all agree that it is in the best interests of the Company and its stockholders. This belief is the product of substantial experience in the area of shareholder representative litigation.

Based upon the foregoing, the Court finds that the Settlement is fair, reasonable and adequate and confers substantial benefits and value on NVIDIA and its shareholders. The Court further finds that the attorneys' fees and expenses negotiated between the parties are fair and reasonable.

This Court hereby approves the Settlement Agreement and Settlement in all respects, and the parties are directed to consummate the Settlement in accordance with the terms of the Settlement Agreement. The Court hereby approves payment of attorneys' fees and expenses in the amount of $2,465,000 to counsel in the above-captioned action and further approves an award of attorneys' fees and expenses in the amount of $2,030,000 to counsel in the Santa Clara Action. This Judgment is a final, appealable judgment and should be entered forthwith by the clerk in accordance with Rule 58 of the Federal Rules of Civil Procedure.

This Court hereby dismisses the Action against the Defendants with prejudice. As among the Federal Plaintiffs, the Individual Settling Defendants, and Nominal Party NVIDIA, the Parties shall bear their own costs, except as otherwise provided in the Settlement Agreement or herein.

Upon the Effective Date, the Federal Plaintiffs and the Santa Clara Plaintiffs, on their own behalf individually and derivatively on behalf of NVIDIA, and NVIDIA, by operation of this Final Judgment, shall and hereby do, fully, finally, and forever release, relinquish, and discharge the Released Claims, including, without limitation: (a) all Released Claims against all defendants in the Actions, the Related Persons, and NVIDIA, and (b) any and all claims, including unknown claims, arising out of, relating to, or in connection with the settlement and/or resolution of the Actions against all defendants in the Actions, the Related Persons, and NVIDIA (except for claims relating solely to the

performance or enforcement of the Settlement or the Settlement Agreement).

"Released Claims" means all claims, debts, demands, rights, liabilities and causes of action, known or unknown, suspected or unsuspected, asserted or that could have been asserted by NVIDIA, or by any of the Plaintiffs individually or on behalf of NVIDIA, against each and every Defendant in the Actions, against any Related Persons, or against NVIDIA, whether based on any federal, state, common, or any other type of law, rule and/or regulation, including any claims under the Securities Exchange Act of 1934, that arises out of, is in connection with, relates to, or is based upon NVIDIA's historical stock option granting practices, whether in whole or in part, directly or indirectly, in any way, including but not limited to, the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, accounting or compensation practices or procedures, granting or exercise of stock options, or omissions through and including the date of execution of this Settlement Agreement. Notwithstanding the foregoing, Released Claims does not include claims regarding NVIDIA's statutory or contractual obligations to provide indemnification or advancements, or claims for recovery under any applicable insurance policy.

Each of the Individual Settling Defendants and each and every Related Person, by operation of this Final Judgment, shall and hereby do, fully, finally and forever release, relinquish and discharge the Federal and Santa Clara Plaintiffs and the Federal and Santa Clara Plaintiffs' Counsel from all claims including unknown claims, arising out of, or relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions or the Released Claims (except for claims relating solely to the performance or enforcement of the Settlement or the Settlement Agreement).

During the course of the litigation, all parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, and all other similar laws or statutes, including California Code of Civil Procedure Section 128.7.

Neither the Settlement Agreement, the Settlement, this Final Judgment, nor any of their terms and provisions, nor any of the negotiations or proceedings connected with the Settlement nor any of the documents or statements referred to therein shall be offered or received against any of the parties as

evidence of or construed as or deemed to be evidence of (a) any liability, negligence, fault, or wrongdoing of any of the parties, (b) a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement, (c) a presumption, concession, or admission by any of the Individual Settling Defendants with respect to the truth of any fact alleged in this Action or the validity of any of the claims or the deficiency of any defense that was or could have been asserted in this Action, (d) a presumption, concession, or admission by the Federal Plaintiffs, NVIDIA, or the NVIDIA Special Litigation Committee of any infirmity in the claims asserted, or (e) an admission or concession that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial.

Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

Without affecting the finality of this Judgment in any way, this District reserves jurisdiction over all matters and disputes relating to the Settlement Agreement, the Settlement, and this Final Judgment, and may enter additional orders as may from time to time be necessary to implement and enforce the Settlement Agreement, the Settlement, and this Final Judgment. Any further matters in the above-captioned action are hereby assigned to a Magistrate Judge. Nothing herein dismisses or releases any claim by or against any party to the Settlement arising out of a breach of the Settlement Agreement or violation of this Final Judgment.

DATED:
  3/18/09

_____
THE HONORABLE
SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE